OPINION OF THE COURT
Martin Evans, J.
This article 78 proceeding, challenging the revocation of a building alteration permit, and the city’s counterclaim, seeking injunctive relief, are each granted in part. Preliminarily, the city’s motion to change the caption so as to add the City of New York and the Commissioner of Buildings, is granted. The change is necessary to effect the relief sought and is not otherwise prejudicial.
Petitioner Tafnet is the owner of the Arvia Hotel, a single-room occupancy (SRO) residence on Manhattan’s upper west side. After purchasing the hotel earlier this year, petitioner applied for an alteration permit to permit *610 the conversion of the hotel to a class A multiple dwelling. On May 12, 1982 the application was approved by the buildings department. On May 28, 1982, approval was summarily revoked, without petitioner having been given notice or an opportunity to be heard. The buildings department revocation was effected via a memorandum of May 28, 1982, which makes clear that the department’s revocation was taken in response to, and based upon, opposition by the Mayor’s Office of SRO Housing. The office is an executive agency independent from the buildings department, concerned with improving living conditions of SRO residents. Although its activities are restricted to only this type of housing, its concerns are much broader than the limited jurisdiction of the buildings department.
The departmental memorandum cited five reasons for revocation of the alteration permit: (1) Reported housing violations by the Department of Housing Preservation and Development (HPD); (2) danger that the “extensive renovation through out the building * * * must further exacerbate the housing violations already existing”; (3) inconsistency of the scope of the work with the stated cost; (4) failure to file rent control documentation; (5) reports from the office on SRO housing of tenant harassment and other criminal violations.
In this article 78 proceeding, petitioner seeks an order (1) vacating the revocation and (2) directing forthwith the acceptance of its alteration plans. The city opposes, claiming that petitioner both failed to exhaust administrative remedies, and is barred from the relief sought by the “clean hands” doctrine. The city also counterclaims for injunctive relief, to bar tenant harassment, abate a common nuisance, correct housing violations and resume renting as an SRO residence.
 The court is constrained to grant the petition to annul the revocation. Having been based on improper reasons, or proper reasons lacking a proper basis, the revocation was arbitrary and contrary to law. Having been directed at the behest of others, and not as a result of the independent exercise of judgment, it was an abuse of discretion. Having been ordered without affording peti *611 tioner notice or an opportunity to be heard, it violated petitioner’s due process rights.
The memorandum in question is vague and conclusory, largely the product of unattributed multiple hearsay. It is unsupported by any evidentiary showing and thus leaves the court unable to determine whether or not it was based on a reasonable exercise of judgment. Moreover, since it forms the record upon which administrative appeals to the Board of Standards and Appeals (B.S.A.) are based (assuming that the memorandum contained at least one valid reason for disapproval), it deprived petitioner of his right to administrative appeal, because it is so written as to contain a permissible basis for the agency’s action. (See New York City Charter, § 666, subd 7; § 669, subd b.)
The buildings department, like any municipal line agency, is a creature of statute. Through its duly appointed commissioner it exercises that jurisdiction granted by statute. The duties of the Buildings Commissioner, as set forth in the city charter, deal “exclusively” with structural and technical matters: the enforcement of the building code, the inspection of premises, the review of plans and the issuance of permits. (New York City Charter, § 645, subd [b] et seq.) General living conditions are not within his jurisdiction; neither are violations of other laws, civil or criminal, which may occur within buildings or structures. Tenant harassment, while a significant problem in the community at large, and apparently, in this hotel, is properly addressed by those agencies which have been given both the power and the resources to effectively prevent and prosecute it: The Department of Housing Preservation and Development, the Housing Court, the police department, and the criminal justice system. It is improper for the Buildings Commissioner to use revocation of a building permit as punishment for activity outside the scope of his jurisdiction, of which he has no independent knowledge, as a means of effecting policies of other city agencies. It is an insidious practice which can only compromise the integrity and effectiveness of an official who must independently evaluate the technical sufficiency of building plans.
Similarly, reports of housing code violations by HPD are an improper basis for revocation. The barely articulated, *612 unsupported fear that the proposed plans might further exacerbate housing violations is not a basis for revocation absent specific proof of how, and which, violation would be worsened by which given alteration. Indeed, if violations are as widespread as respondent believes, substantial renovation may ultimately be the only effective means of bringing the premises into compliance. ,
The remaining two reasons cited in the memorandum, while legally sufficient in theory, were insufficient as applied by the commissioner here. The supposed failure to file rent control documentation was apparently no failure at all, since the evidence indicates that none was necessary in light of the entire premises being subject to rent stabilization, not rent control. Had the commissioner given petitioner notice of this alleged dereliction, a simple explanation would have corrected the misunderstanding. Finally, there is no evidence to support the contention that the projected cost is underestimated; without some data and analysis, it cannot be determined whether this conclusion is correct or was rationally reached.
Finally, and most importantly, the summary manner in which the revocation was effected is incompatible with the most rudimentary notions of procedural due process. By failing to give notice of how the proposed plans were insufficient, respondent gave petitioner no opportunity to either offer evidence or explanation to the contrary, or to bring its plans into compliance. Indeed, by what appears to have been a punitive revocation, based on matters outside of the submitted alteration plan, respondent communicated its unwillingness to discuss or consider the suitability of a revised plan. Not only did respondent make clear its refusal to grant approval to any alteration plans, it foreclosed any meaningful administrative appeal to the Board of Standards and Appeals by preventing petitioner from making a record. While a formal evidentiary hearing is not always required in such situations, it was incumbent on respondent to at least give petitioner an opportunity to submit additional documentation in response to specified defects in the plans submitted. Without such specific objections and responses, an appellant to the B.S.A. will never have an opportunity to present its case, since in adjudicat *613 ing building permit appeals the B.S.A. can only consider “all the papers * * * upon which the action appealed from was taken.” (New York City Charter, § 669, subd b.) The Board of Standards and Appeals is not authorized to hold an evidentiary hearing in building appeals as it is in zoning appeals. Because a permit appellant cannot enlarge the record before the B.S.A., if there is no record made below, there is effectively no basis for appeal. The exhaustion of remedies doctrine cannot be applicable to this situation; to apply it so as to bar this proceeding would effectively leave petitioner without any remedy.
The charter itself belies such a circumstance. The framers must have intended that an adequate record, based upon due notice and an opportunity to be heard, be made by the line agency before finally ordering revocation; otherwise the failure to provide for a hearing on appeal would have rendered the B.S.A. procedure patently unconstitutional on due process grounds. Given the constitutional violation by its own agency, the city cannot resort to the “clean hands” doctrine.
The buildings department revocation of May 28, 1982 is accordingly vacated; petitioner, however, shall be stayed from commencing any work based on the permit until five days after service by it on respondent’s attorney of the judgment and order to be settled hereon.
The city has met its evidentiary burden on its counterclaim for an injunction against the harassment of tenants; that branch of the counterclaim is granted. That branch asserting the existence of a common nuisance is severed; upon the filing of a note of issue and a statement of readiness, the clerk shall place that issue on the calendar for immediate trial. The remaining prayers for injunctive relief are denied. They are properly the subject of the ongoing Housing Court proceeding. This court should not issue an order mandating the renting of rooms or other specific acts which could conflict with the intention of the Housing Court, or interfere with the city’s own object of abating the conditions it alleges constitute a public nuisance.